ESTATE OF SARAH A. BERGAN, DECEASED, MARGARET L. GOGGIN, EXEC-UTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 107412, 107420. Promulgated February 9, 1943.

*Emerson F. Davis, Esq.*, for the petitioner.
*George R. Sherriff, Esq.*, for the respondent.

548

OPINION.

Black, *Judge:* The questions involved have been previously stated. We will first consider the question whether any part of Miss Bergan's share of Mrs. Johnson's estate in excess of the $50,000 block of bonds should be included in Miss Bergan's gross estate as representing a transfer in contemplation of, or as taking effect at death. Although the respondent in his deficiency notice determined that "The value of the property, transferred by the decedent, prior to death, is included in the gross estate under the provisions of Section 302 (c) and (d) of the Revenue Act of 1926, as amended," that statute was not in effect on the date of Miss Bergan's death, her death having occurred after February 10, 1939. The statute then in effect was the Internal Revenue Code. See secs. 3, 4, and 800, I. R. C. Corresponding to the provisions of the statute cited in the deficiency notice are subsections (c) and (d) of section 811 of the Internal Revenue Code. In his brief the respondent now cites as the applicable statute section 811 (c)[1] and makes no contention that section 811 (d) has any application.

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\*     \*     \*     \*     \*     \*     \*

(c) Transfers in Contemplation of, or Taking Effect at Death.—To the extent of any interest therein of which the decedent has at any time made a transfer,, by trust

A prerequisite to the consideration of any question arising under section 811 (c) is that at some time during her life the decedent must have made a "transfer." If the property sought to be included in the decedent's gross estate under section 811 (c) was never at any time transferred by the decedent, that section would have no application to such property.

In the instant proceedings the property in question is the decedent's share of Mrs. Johnson's estate in excess of the $50,000 block of bonds. Petitioner primarily contends as to this property that Miss Bergan never at any time made a transfer; that she had renounced her rights as distributee; and that upon the authority of *Brown* v. *Routzahn*, 63 Fed. (2d) 914; *In re Wolfe's Estate*, 89 App. Div. 349; 85 N. Y. S. 949; affirmed *per curiam*, 72 N. E. 1152; and *In re Clarkson's Estate*, 137 Misc. Rep. 741; 244 N. Y. S. 470, no part of such property may be included in Miss Bergan's gross estate. As a first alternative, petitioner contends that if the direct transfer from Mrs. Johnson's estate to Mrs. Goggin be held in effect to be a transfer from Miss Bergan to Mrs. Goggin, such constructive transfer was not one in contemplation of death or intended to take effect in possession or enjoyment at or after death. As a second alternative, petitioner contends that the constructive transfer would come within the exception mentioned in section 811 (c), namely, "except in case of a bona fide sale for an adequate and full consideration in money or money's worth," and for that reason would not be subject to the estate tax. Finally, and as a third alternative, petitioner contends that, if all of the previous contentions are denied, there was at least a substantial consideration received by Miss Bergan and that proper effect should be given thereto under section 811 (i) of the Internal Revenue Code.[2] It should be pointed out here that section 811 (i) of the Internal Revenue Code has no application unless we hold that the transfer was made in contemplation of death or was intended to take effect in possession or enjoy-

---

or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide·sale for an adequate and full consideration in money or money's worth. Any transfer of· a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter.

[2] (i) TRANSFERS FOR INSUFFICIENT CONSIDERATION.—If any one of the transfers, trusts, interests, rights, or powers, enumerated and described in subsections (c), (d), and (f) is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent.

ment at or after death. For reasons stated later on, we hold that the transfer was not so made.

The respondent contends that as a matter of law Miss Bergan could not accept a part of her share of Mrs. Johnson's estate and renounce the balance; that she either had to accept all or renounce all; that since unquestionably she did accept the $50,000 block of bonds, it must be held that she accepted her entire share; that, having accepted her entire share, she transferred that share in excess of the $50,000 block of bonds to Mrs. Goggin in consideration for Mrs. Goggin's promise to support Miss Bergan for the remainder of Miss Bergan's life; and that petitioner has failed to prove the facts necessary to bring her within the exception mentioned in section 811 (c). The respondent further contends that in substance the alleged transfer by Miss Bergan of her share of Mrs. Johnson's estate in excess of the $50,000 block of bonds was a testamentary disposition; that in substance the same result was achieved as if Miss Bergan had transferred the property in question in trust, reserving the income therefrom for life with the provision that upon her death the trust would cease and the corpus be distributed to Mrs. Goggin; that section 811 (c) is clearly applicable; and that in principle the instant estate tax proceeding is not distinguishable from *Tips* v. *Bass*, 21 Fed. (2d) 460, and *Updike* v. *Commissioner*, 88 Fed. (2d) 807; certiorari denied, 301 U. S. 708.

We do not agree with the respondent that it was necessary for the decedent (Miss Bergan) to either accept all or renounce all of her share in her sister's estate. We think that under the New York law the decedent could have accepted the $50,000 block of bonds and could have renounced the balance of her share. See *In re Merritt's Estate*, 155 App. Div. 228; 140 N. Y. S. 13; *In re Matthiessen's Will*, 175 Misc. 466; 23 N. Y. S. (2d) 802. Did Miss Bergan renounce the balance of her share of Mrs. Johnson's estate in excess of the $50,000 block of bonds? We think this question must be answered in the negative.

Taking all the evidence into consideration, we think it must be held that the decedent made a transfer to Mrs. Goggin of the decedent's share of Mrs. Johnson's estate in excess of the $50,000 block of bonds. Otherwise, there would have been no consideration for Mrs. Goggin's promise to support Miss Bergan for the remainder of Miss Bergan's life. And Mrs. Goggin testified at the hearing of this proceeding that "The agreement between my sister, Miss Bergan, and myself, under which I agreed to pay all her expenses so long as she should live, was looked upon by us as a formal contract, although there was never any writing to evidence the same." Again, in the words of Mrs. Goggin, "She [Miss Bergan] suggested to me that she would like to turn over her share of the Kate A. Johnson Estate to me in return for my agreement to support her and take care of

her for the remainder of her life.  *  *  *  She stated, however, that she would like to have about $50,000 in securities transferred to her and that such a sum would be sufficient personal assets for all her purposes, and the income therefrom would be enough to make periodic charitable gifts which were her chief concern." We find, therefore, as stated in our findings, that Miss Bergan "transferred" her share of Mrs. Johnson's estate in excess of the $50,000 block of bonds to Mrs. Goggin in consideration for the latter's promise to support Miss Bergan for the remainder of Miss Bergan's life. Since there was no renunciation by Miss Bergan of any part of her share of Mrs. Johnson's estate, the cases of *Brown* v. *Routzahn*, *In re Wolfe's Estate*, and *In re Clarkson's Estate*, all *supra*, relied upon by petitioner in support of her primary contention, have no application here.

Is this transfer of Miss Bergan's share of Mrs. Johnson's estate in excess of the $50,000 block of bonds includable in Miss Bergan's gross estate under section 811 (c) of the Internal Revenue Code?

We have found as a fact that the transfer was not made in contemplation of death. Cf. *United States* v. *Wells*, 283 U. S. 102. Not any of the evidence points in that direction. At the time the transfer was made Miss Bergan was in excellent health for a woman of her age. Her motives for the transfer were that she did not want to be bothered with looking after that much property, but she did want to be supported for the remainder of her life and to retain the $50,000 so she would have enough income of her own to make gifts to her church and to charity. She had never owned much property and from the year 1904 she had never paid her living expenses. In other words, she wanted things to go on just about as they had been going, and in the making for such an arrangement the thought of death was not the impelling cause of the transfer. The transfer was not testamentary in character. All the facts, we think, tend to show that the transfer was associated with life rather than death.

Nor was the transfer intended to take effect in possession or enjoyment at or after Miss Bergan's death. It was intended to take effect and did take effect immediately. Upon the completion of the transfer in 1933, the title vested in Mrs. Goggin, who was then free to use or dispose of the property in any way she desired. The transfer, although made in consideration for support, was unconditional and irrevocable. Miss Bergan could not possibly retrieve the property transferred or any part of it, and Mrs. Goggin could have disposed of all of it immediately if she had so desired.

The respondent strongly contends that in substance Miss Bergan retained for her life the right to the income from the property transferred, and that for this reason the property must be included in Miss Bergan's gross estate under section 811(c), *supra*. In this connec-

tion the respondent points out that the living expenses of Miss Bergan, Mrs. Goggin and her two adult sons, all of which were paid by Mrs. Goggin, were between $25,000 and $30,000 a year, and that, if it took $7,500 a year for Mrs. Goggin to support Miss Bergan, the income from the property transferred (1933 agreed value, $133,662.37) would hardly be sufficient. From this the respondent argues that the result of the agreement between the two sisters was in substance the same as if Miss Bergan had transferred the property in trust with instructions to pay her the income therefrom for life and upon her death to deliver the principal to Mrs. Goggin, citing *Tips* v. *Bass* and *Updike* v. *Commissioner, supra.*

We think these cases are distinguishable from the instant estate tax proceeding. In both these cases relied upon by the respondent actual trusts were created to secure the annuities, whereas no trust was created in the instant proceeding. Mrs. Goggin was free to use the property transferred to her in any way that she pleased. The title vested in Mrs. Goggin and not in any trustee. Miss Bergan did not reserve to herself the income from the property transferred. She had entered into a contract with her sister for support and transferred the property in question as consideration for the contract. In the *Tips* case the Government conceded that the real property transferred of the value of $86,000, which was not placed in trust, was not includable in the gross estate. Although the entire property in the *Updike* case was not placed in trust,[3] the entire transfer in that case was made in contemplation of death, a fact which clearly distinguishes that case from the instant proceeding. In other words, the property transferred in the *Updike* case was included in the gross estate because the transfer was made in contemplation of death and not because the decedent there had in effect reserved to himself for life the income from the property transferred. Of course, if we should hold in the instant case that the transfer was made in contemplation of death, it would have many similar features to the *Updike* case, but, as already stated, we hold the transfer was not made in contemplation of death, nor was it intended to take effect in possession or enjoyment at or after decedent's death. The *Updike* case is therefore not controlling. For reasons above stated, we hold that none of the $175,565.10 in question should be added to decedent's gross estate. On this issue we sustain petitioner.

We shall now consider the question whether any part of Miss Bergan's share of Mrs. Johnson's estate in excess of the $50,000 block of bonds is taxable as a gift made in 1933. The applicable

[3] The value of the property transferred in the *Updike* case was $450,230.38, of which $190,000 of securities were deposited with a corporation in which the children of the decedent and their immediate families were heavily interested.

provisions of sections 501 and 503 of the Revenue Act of 1932 [4] are in the margin.

In deciding the estate tax question we held that Miss Bergan made a "transfer" during the year 1933 of her share of Mrs. Johnson's estate in excess of the $50,000 block of bonds in consideration for Mrs. Goggin's promise to support Miss Bergan for the remainder of Miss Bergan's life. The parties agree that in 1933 the value of the property thus transferred by Miss Bergan was the amount of $133,662.37. Petitioner contends that the transfer was for an adequate and full consideration in money or money's worth, and that there was, therefore, no gift. In the alternative, petitioner contends that if the transfer was for less than an adequate and full consideration, the minimum value of such consideration computed under Regulations 79, article 19 (7), would be $38,880.15, and that only the difference between $133,662.37 and $38,880.15 should be deemed a gift under section 503 of the Revenue Act of 1932. The respondent contends that the transfer was for less than an adequate and full consideration; that petitioner has failed to prove the value of the consideration, namely, Mrs. Goggin's promise to support Miss Bergan for the remainder of Miss Bergan's life; and that, therefore, the entire value of the property transferred ($133,662.37) should be deemed a gift under section 503.

The Committee on Ways and Means, in its report accompanying the Revenue Bill of 1932, referred to section 503 (Cumulative Bulletin 1939–1, Part 2, p. 477) as follows:

Since the tax is designed to reach all transfers to the extent that they are donative, and to exclude any consideration not reducible to money or money's worth, it is provided in this section that where the transfer is made for less than an adequate and full consideration in money or money's worth, the excess in value of the property transferred over such consideration shall be deemed a gift. For example, if A sells property worth $10,000 to B for $1,000, there is a gift of $9,000.

Article 8 of Regulations 79 provides as follows:

Art. 8. *Transfers for less than an adequate and full consideration.*—Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property

---

[4] SEC. 501. IMPOSITION OF TAX.

(a) For the calendar year 1932 and each calendar year thereafter a tax, computed as provided in section 502, shall be imposed upon the transfer during such calendar year by an individual, resident or nonresident, of property by gift.

(b) The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; * * *

SEC. 503. TRANSFER FOR LESS THAN ADEQUATE AND FULL CONSIDERATION.

Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this title, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

exceeded the value of the consideration constitutes a gift within the meaning of the statute. If the consideration is not reducible to a money value, as in the case of love and affection, promise of marriage, etc., it is to be wholly disregarded, and the entire value of the property transferred constitutes the amount of the gift. A sale, exchange, or other transfer of property (see article 2) in the ordinary course of business, where the transaction is bona fide and at arm's length and free from any donative intent, shall be considered as made for an adequate and full consideration in money or money's worth.

In the instant gift tax proceeding there was a valid consideration for the transfer in question, namely, Mrs. Goggin's promise to support Miss Bergan for the remainder of Miss Bergan's life, but it was less than an adequate and full consideration for the property which was transferred. Is that consideration reducible to a money value? We think it is. Mrs. Goggin was to support Miss Bergan according to the standard then being enjoyed by the four adults which was at a cost of between $25,000 and $30,000 a year, or an average of between $6,250 and $7,500 for each adult. We adopt the lower figure in view of the insufficiency of the evidence to adequately establish a higher figure than that. We think such a consideration may be valued in the same way that an annuity of $6,250 for Miss Bergan's life would be valued. At the time of the transfer in 1933 Miss Bergan was 74 years of age. According to column 2 of table A mentioned in article 19 (7) of Regulations 79, the present value of $1 due at the end of each year during the life of a person 74 years of age is $5.18402, or $32,400.13 for an annuity of $6,250. This is the same method of computation as petitioner used in arriving at the figures of $38,880.15 as being the value of Mrs. Goggin's agreement to support and maintain Miss Bergan during the remainder of her life. The difference in our figure and that arrived at by petitioner is that we use a figure of $6,250 as the cost of annual support and maintenance for Miss Bergan, whereas petitioner used $7,500 as such annual figure. We find, therefore, that Miss Bergan transferred property of the value of $133,662.37 for an equivalent in money of $32,400.13, and, under section 503 of the Revenue Act of 1932, we hold that the excess of the value of the property transferred over the value of the consideration, or $101,262.24, shall be deemed a gift and shall be included in computing the amount of gifts made by Miss Bergan during the calendar year 1933.

The only argument that petitioner uses as to why no penalty should be assessed is that no gift tax was due. Inasmuch as we sustain the Commissioner in part in his imposition of the gift tax, there will be a penalty, but not as great as the Commissioner has imposed. It follows as a matter of computation that the 25 percent penalty for failure to file a gift tax return should be recomputed on the revised gift tax deficiency.

*Decisions will be entered under Rule 50.*