*Decision will be entered under Rule 50.*

ESTATE OF CORNELIA B. SCHWARTZ (ALSO KNOWN AS CORNELIA B. SCHWARZ), H. LIVINGSTON SCHWARTZ, ADMINISTRATOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8998. Promulgated August 27, 1947.

*George R. Sheriff, Esq.*, and *William Schroeder, Esq.*, for the petitioner.

*Thomas R. Wickersham, Esq.*, for the respondent.

234

BLACK, *Judge*: The issues presented in this proceeding are (1) Whether the transfer by decedent on June 4, 1932, of property of the

value of $147,366.33 is includible in decedent's gross estate under section 811 (c) of the Internal Revenue Code, and (2) whether decedent made a valid transfer in 1935 of furniture, jewelry, and other personal property of the value of $3,000 to her daughter.

*Issue No. 1.*—Respondent contends that the transfer was made in contemplation of death within the meaning of the statute and the value of the transferred assets is includible in decedent's gross estate. He argues, in the alternative, that the decedent retained for life the right to the income from the property transferred and it is, therefore, includible under section 811 (c) on that account. The applicable section of the Internal Revenue Code is set out in the margin.[1]

We first consider whether or not the transfer was made in contemplation of death as that phrase is used in the applicable statute. Petitioner contends that the transfer was not made in contemplation of death and should not be included in the decedent's gross estate. Petitioner does not question the correctness of the respondent's determination that $147,366.33 was the fair market value of the securities transferred as of the date of the decedent's death on February 13, 1944.

The transfer was made approximately twelve years before the decedent's death, which makes inapplicable the presumption mentioned in 811 (c) relative to transfers made within two years prior to death.

The "dominant purpose" of the statute "is to reach substitutes for testamentary disposition, and thus prevent evasion of the estate tax." *United States* v. *Wells*, 283 U. S. 102, 116. The words "in contemplation of death" as used in the statute require the application of a subjective test and an attempt to ascertain from the facts the state of mind of the donor at the time of the transfer. *United States* v. *Wells*, *supra; Allen* v. *Trust Co. of Georgia*, 326 U. S. 630. "As the transfer may otherwise have all the indicia of a valid gift inter vivos, the differentiating factor must be found in the transferor's motive.

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

* * * * * * *

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom ; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. *Any transfer of a material part* of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter.

Death must be 'contemplated', that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition." *United States* v. *Wells, supra.* Many gifts, however, are motivated by "purposes associated with life, rather than with the distribution of property in anticipation of death." *United States* v. *Wells, supra.* These motives cover a wide range. "There may be a desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death." *United States* v. *Wells, supra.* It is, therefore, necessary to examine the facts and circumstances of each case to ascertain the "dominant motive of the donor in the light of his bodily and mental condition, and thus give effect to the manifest purpose of the statute." *United States* v. *Wells, supra.*

What was the dominant motive of the decedent in making the transfer of substantially all of her property to her children when she was 86 years of age? Petitioner argues that because of decedent's advanced age she wished to be relieved of the responsibility of the management of her property and the collection of income; that in place of fluctuating and uncertain income she wanted a specified annuity, regardless of the amount of the income from the securities. He maintains that all the circumstances indicate thoughts of life rather than death; that decedent continued to live in reasonably good health for approximately 12 years after the transfer and died from an accidental fall and not from any illness. Respondent argues that decedent's dominant purpose was to distribute her estate to her children, the natural objects of her bounty, while she lived and in lieu of disposition by will after death. Since she depended for her support upon the securities to be transferred, it was necessary in some way to retain the income for her maintenance and support, hence the reason for the sale device and the provision for the payment of $7,000 annually by the children. We think respondent's view is supported by the evidence, when viewed all together.

The evidence shows that on June 4, 1932, the decedent transferred to her children securities having a value of $147,366.33 as of the date or her death, divesting herself of all of her property save some real property in Albany, New York, valued at $6,000, and personal effects valued at $3,000. At the time of the transfer she was 86 years of age. She was mentally alert and physically active for her age.

However, it is reasonable to assume that decedent, being a practical woman, took into consideration the fact that she was 86 years of age, that the sands of life were running out, and that her life expectancy was short. It would be closing our eyes to the obvious to assume that thoughts of these matters did not enter into the decedent's mind and motivate the transfer. Age alone does not furnish a decisive test as to whether a transfer is motivated by considerations associated with

death, *United States* v. *Wells, supra; Flack* v. *Holtegel*, 93 Fed. (2d) 512, but where, as here, other facts point to testamentary disposition, old age may tip the scales.

Decedent transferred the securities to the children in return for their promise to pay her $7,000 per annum for the term of her natural life. At the same time the children transferred the securities to the Girard Trust Co. of Philadelphia, as trustee, and provided that the trustee was to pay the net annual income of the trust, up to but not exceeding $7,000, to the decedent for life, and any excess over $7,000 was to be paid to the daughter. Upon the decedent's death the principal was to be paid to the three children equally. Petitioner claims that the reason for the transfer was that decedent wished to exchange the fluctuating income of the securities for an assured income of $7,000 per annum. But in practice she did not do this. She continued to receive the fluctuating income from the securities set up in the trust and the amount that she received averaged somewhat less than $7,000 per year, and the children never at any time attempted to make up the difference in order that she would have the fixed annual income of $7,000. Thus we think it is fair to hold that all decedent received as a consideration for the transfer was an amount equal to the net income from the securities transferred. The same result could have been accomplished by the decedent setting up the trust directly.

Moreover, the evidence does not convince us that the dominant motive of decedent in making the transfer was primarily associated with life. *United States* v. *Wells, supra.* The purpose of the transfer herein was not to aid her children or to have them enjoy the benefits of the property during her lifetime. The children received no benefit during her lifetime from the property transferred, since they were required to pay the decedent the annual amount of $7,000 during her life, which was the estimated amount, conservatively made, of annual income that the property transferred would yield. Moreover, the children immediately transferred the property in trust to secure this payment, as set out above.

We think the facts herein, when taken all together as they should be, point to motives of the sort which lead to testamentary disposition. The property transferred constituted substantially all of decedent's estate. By this act she put her house in order against the time of her demise. Decedent did not make a will thereafter and died intestate.

Petitioner maintains, however, that the transfer was a bona fide sale for an adequate and full consideration in money or money's worth and comes within the exception mentioned in 811 (c) of the code, and for that reason it would not be subject to the estate tax. He maintains that the decedent made the transfer of the securities in consideration of the promise of the children to pay her an annuity of $7,000 a year.

The transfer agreement recited that, in consideration of the sale,

transfer, assignment, and delivery of the property to the children, they agreed to pay decedent the sum of $7,000 per year during the term of her life. As we have pointed out above, the decedent did not receive the amount of $7,000 per annum, as provided in the transfer agreement, but continued to receive only the income from the securities transferred, which averaged less than $7,000 per year, and the children made no attempt to make up the difference. The substance of the transaction, therefore, is that all decedent received as a consideration for the transfer was the income from the securities transferred. As we have pointed out above, the same result could have been accomplished by the decedent setting up the trust directly. The whole arrangement, considered in respect of what was accomplished, was more of a testamentary disposition than a sale for an adequate and full consideration such as the statute contemplates in relieving a decedent's estate from taxation. *Phillips* v. *Gnichtel*, 27 Fed. (2d) 662.

The facts, in our judgment, support respondent's determination that the transfer made by decedent was made in contemplation of death, was a substitute for a testamentary disposition, and that the value of the transferred assets in the amount determined by the respondent is includible in decedent's gross estate. *Smails* v. *O'Malley*, 127 Fed. (2d) 410; *Updike* v. *Commissioner*, 88 Fed. (2d) 807; *Oliver* v. *Bell*, 103 Fed. (2d) 760; *Purvin* v. *Commissioner*, 96 Fed. (2d) 929; *Worcester County Trust Co.* v. *United States*, 35 Fed. Supp. 970; *In re Kroger's Estate*, 145 Fed. (2d) 901; certiorari denied, 324 U. S. 866. But even if we are wrong in holding that the transfer in question was made "in contemplation of or intended to take effect in possession or enjoyment at or after death," as those words are used in section 811 (c) of the code and as interpreted by the Supreme Court in *United States* v. *Wells, supra*, nevertheless, we would have to decide against petitioner by sustaining respondent's alternative contention, which is that "the transfer of June 4, 1932 by decedent was a transfer whereby possession and enjoyment of the income was retained by decedent." Section 811 (c) of the code, as amended, provides that there shall be included in a decedent's gross estate the value of property "of which he has at any time made a transfer by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of or the right to the income from, the property * * * *"

It is petitioner's contention that decedent should not be regarded as the grantor of the trust of June 4, 1932; that the transfer of the securities on that date from decedent to her three children should be treated as a purchase by her from them of an annuity of $7,000; and that the creation of the trust on the same date by the three children in their mother's favor should be treated as an entirely separate transaction

and one which was made for the protection of the children, to secure the payment of the annuity, without having to fall back on the children for its payment. If we should sustain petitioner's contention that the two transactions should be considered separate and apart from each other it would naturally follow that we would hold, in petitioner's favor, that decedent was not the settlor of the trust. However, we do not think the facts would warrant us in treating these two transactions separately, but that they must be considered as parts of the same transaction, and, when this is done, we think we must hold that decedent was the real settlor of the trust of June 4, 1932, for it was she who on the very day that it was created furnished the securities which comprised the corpus of the trust, and before the transactions were concluded she was to receive its entire income, annually and payable quarterly, up to $7,000 in any one year.

In the case of *Estate of George W. Hall*, 6 T. C. 933, the decedent in his lifetime in 1929 and 1930 had turned over to his two children certain securities for the purpose of having the children create two trusts. The income of these two trusts was to be paid to decedent for life. Upon decedent's death in 1941, the Commissioner included the value of these securities in decedent's estate under section 811 (c) of the code, as amended. The taxpayer contested the Commissioner's determination on two grounds: (1) That the decedent was not the grantor of the two trusts and should not be so considered; (2) that even if decedent were considered as the grantor of the two trusts, they were created prior to March 1, 1931, and *May* v. *Heiner*, 281 U. S. 238, had not been overruled, but was still the law as to trusts created prior to March 3, 1931, and under *May* v. *Heiner* the corpora of the trusts would not be included in decedent's estate. In passing upon these contentions we overruled taxpayer's first contention and held that decedent must be regarded as the settlor of the two trusts, notwithstanding that they were actually executed by his two children. However, we sustained taxpayer's second contention and held that the value of the corpora of the two trusts should not be included in decedent's gross estate because the trusts were created prior to the amendment of March 3, 1931, and *May* v. *Heiner*, *supra*, had not been overruled. It is, of course, true that in the *Hall* case the parties had stipulated "that the securities which the decedent's two children conveyed to the respective trusts had been received by them for that purpose from the decedent immediately prior to the creation of the respective trusts and in the case of each trust the two transfers were simultaneous." We have no such stipulation here. On the contrary, it is petitioner's contention that on June 4, 1932, the children received these securities from their mother with no strings whatever attached to them, that the matter of creating the trust was one entirely of their own volition, and that their mother had nothing whatever to do with it. However, as we have already stated,

we think that, from all the evidence, we must consider the two transactions together, that the mother fully understood what was going on, and that she knew that contemporaneously with the transfer of the securities the children were to create a trust making her the income beneficiary of the trust to the extent of $7,000 a year. This was a part of the general agreement to which we think she was a party. When so considered, we do not think the facts on this point are distinguishable from those in the *Hall* case, except that in the *Hall* case the trusts were created *prior* to the amendment of March 3, 1931, and in the instant case the trust was created *after* the date of such amendment. It is this latter difference which makes the difference in tax consequence.

The petitioner strongly urges the case of *Estate of Sarah A. Bergan*, 1 T. C. 543, as a case which supports his contention that the value of the property which decedent conveyed to her children on June 4, 1932, should not be included in her gross estate. We think the two cases are distinguishable. In the *Bergan* case the decedent and a sister, Mrs. Goggin, were the only heirs at law of a third sister, Mrs. Johnson, who died leaving a gross estate of approximately half a million dollars. Decedent orally agreed that she would convey to Mrs. Goggin the greater part of her share in her sister's estate in consideration of Mrs. Goggin's promise to support her in Mrs. Goggin's home for the balance of her life. Both parties carried out their agreement and thereafter decedent lived with and was supported by Mrs. Goggin for more than six years and until her death. This Court held that the agreement was not a transfer in contemplation of death and was not intended to take effect in possession or enjoyment at or after death, but was a sale for an inadequate consideration; that the part of the property transferred to purchase an annuity was a sale and the balance was a gift inter vivos upon which the gift tax should be imposed. There are two *vital* factual differences, we think, between the *Bergan* case and the instant case, namely (1) In the *Bergan* case the agreement was actually carried out by Mrs. Goggin and she delivered the full consideration she had agreed upon by supporting Miss Bergan for the remainder of her life, and (2) the transfer was effective immediately and at all times thereafter Mrs. Goggin was free to use the property in any way she saw fit. In our opinion in the *Bergan* case, among other things, we said:

From this the respondent argues that the result of the agreement between the two sisters was in substance the same as if Miss Bergan had transferred the property in trust with instructions to pay her the income therefrom for life and upon her death to deliver the principal to Mrs. Goggin, citing *Tips* v. *Bass* and *Updike* v. *Commissioner, supra*. We think these cases are distinguishable from the instant estate tax proceeding. In both these cases relied upon by the re-

spondent actual trusts were created to secure the annuities, whereas no trust was created in the instant proceeding. Mrs. Goggin was free to use the property transferred to her in any way that she pleased. The title vested in Mrs. Goggin and not in any trustee. Miss Bergan did not reserve to herself the income from the property transferred. She had entered into a contract with her sister for support and transferred the property in question as consideration for the contract.

Because of the foregoing stated reasons, we think it is obvious that *Estate of Sarah A. Bergan, supra,* is distinguishable on its facts from the instant case.

*Issue No. 2.*—The deficiency notice includes in gross estate an item of $3,000 covering furniture, jewelry, and other personal property. The grounds of the inclusion are not stated, other than a reference to section 811 of the Internal Revenue Code. The only issue as to this particular property under the pleadings is whether this furniture, jewelry, and personal property was the property of the decedent at the time of her death. Petitioner alleged that during her lifetime the decedent made transfers of said property to her daughter. Respondent's answer denies this. The burden of proof is therefore upon petitioner. Petitioner meets this burden of proof by introducing in evidence a bill of sale, duly executed and delivered by decedent December 5, 1935, by which she conveyed to her daughter, Cornelia Beekman Schwartz, "All the goods and chattels in #435 Second Street, Lakewood, N. J., consisting of household furniture and general household effects, my personal belongings including my jewelry and excepting my articles of clothing." There is nothing in the record which causes us to doubt the authenticity of this bill of sale or that by reason of it the daughter became the owner of these household effects and personal belongings of decedent, except her articles of clothing. Decedent had in 1927 conveyed to her daughter the residence at 435 Second Street, Lakewood, New Jersey, and there is nothing strange or unusual in her making a gift to her daughter of these household furnishings which were situated in the Lakewood residence.

Respondent does not contend that the gift, if any, of these articles by the mother to her daughter was made in contemplation of death. The issue is only one of ownership at time of decedent's death. On this issue, we sustain petitioner.

As we have heretofore stated, at the hearing petitioner amended his pleadings to ask for the allowance of larger attorney's fees. No evidence was offered on this issue, but both parties seem to agree that it is a question which will be properly settled by agreement under Rule 50. The issue will be so treated.

*Decision will be entered under Rule 50.*