ESTATE OF MARIA BECKLENBERG, DECEASED, FRED BECKLENBERG, JR., EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61951. Filed November 18, 1958.

*Arthur Abraham, Esq.*, for the petitioner.

*Don S. Harnack, Esq.*, and *David H. Nelson, Esq.*, for the respondent.

MULRONEY, *Judge:* Respondent determined a deficiency in Federal estate taxes against the petitioner in the amount of $182,727.14. The issues are (1) whether certain property transferred to a trust created August 12, 1938, is includible, all or in part, in decedent's gross estate under section 811 (c) (1) (B) of the Internal Revenue Code of 1939;[1] and (2) the proper valuation of such interest so includible in the decedent's gross estate.

### FINDINGS OF FACT.

Some of the facts have been stipulated and they are hereby incorporated by this reference.

---

[1] All section references are to the Internal Revenue Code of 1939, as amended, unless otherwise noted.

Maria Becklenberg, decedent, was born May 18, 1872, and died on December 3, 1951. Fred Becklenberg, Sr., her husband, died on March 11, 1948. An estate tax return was filed by the executor of the estate of Maria Becklenberg on February 27, 1953, with the district director of internal revenue for the first district of Illinois, at Chicago, Illinois. Fred Becklenberg, Jr., decedent's son, is the executor of decedent's estate.

On March 17, 1934, decedent, Fred Becklenberg, Sr., Fred Becklenberg, Jr., and Arthur J. Sporborg, as custodian of title, executed a revocable trust agreement hereinafter called the 1934 trust. Fred Becklenberg, Jr., was designated as trustee. The decedent, Fred Becklenberg, Sr., and Fred Becklenberg, Jr., were the only donors to the 1934 trust. No contributions were made to this trust after March 17, 1934. The trust instrument provided, *inter alia*, as follows:

Whereas the first three parties each own and control certain pieces of real estate, mortgages, shares of stock, choses in action and accounts receivable, all of which are set forth in Exhibit "A" attached hereto and hereby made a part hereof; * * *

Exhibit A listed the contributions of the donors, and the totals of the contributions made by each are as follows:

| Donor | Value given in Exhibit A | Per cent of total value |
|-------|-----|-----|
| Fred Becklenberg, Sr | $293,499.32 | 20.73 |
| Maria Becklenberg | 379,166.37 | 26.78 |
| Fred Becklenberg, Jr | 743,186.56 | 52.49 |
| Total | 1,415,852.25 | 100 |

Among the items listed in Exhibit A under the decedent's contributions were several accounts receivable and mortgages receivable in relatively smaller amounts; the Ellis Avenue LaStrain Hotel, $10,776.17; the Farwell Avenue property, $10,725.97; equities in the Oak Street property, $141,775.39; the Wellington Apartment building, $151,048.88; in the Howard and Custer property, $3,387.49; and bonds in the Diversey Building Corporation, $57,452.95.

All the financial and business transactions of the 1934 trust were handled through the North Side Management Corporation, hereinafter called North Side, which was created as a fiscal agent for the trust. North Side handled all receipts and disbursements and the only bank account covering the trust operations was in its name. No segregated accounts were maintained. Prior to 1938 several of the properties contributed by decedent were sold.

There was no distribution made under the 1934 trust prior to its revocation. On August 12, 1938, decedent, Fred Becklenberg, Sr., Fred Becklenberg, Jr., Mary B. Murphy, and Johnson H. Pace exe-

cuted a revocation of the 1934 trust and, on the same date, the decedent, Fred Becklenberg, Sr., Fred Becklenberg, Jr., and Mary B. Murphy executed an irrevocable trust agreement, hereinafter called the 1938 trust. The instrument of revocation executed by all of the settlors of the 1934 trust provided all of the property held by that trust be turned over to the trustees of the 1938 trust.

The preamble statements in the 1938 trust instrument set forth what the trust was to accomplish. These "WHEREAS" clauses related the ownership of the donors in numerous stores, apartments, and apartment hotels, which were encumbered by mortgages, and also their ownership of securities, all as shown in attached schedules, and the clauses related the existing financial conditions and the decline of real estate values and unfavorable conditions with respect to securities. It is stated in this preamble that their ownership of these real and personal properties under the conditions then existing "in the opinion of the Donors renders imperative the mingling of the property of the respective Donors in a single trust in order to procure the highest degree of unification in the operation, management and control thereof."

The 1938 trust instrument designated Fred Becklenberg, Sr., as trust manager and Fred Becklenberg, Jr., and Mary B. Murphy as trustees and it provided that as long as the manager lived or until he resigned as manager the trustees could only act upon the manager's direction. The trustees, subject to the manager's control as long as he was active, and the manager, were given broad powers with respect to the trust property "and additions thereto and substitutions therefor." They were given "uncontrolled discretion and judgment" with respect to continuing the operation of any business, with respect to registering securities in their names, with respect to uniting with other owners of property or securities in consolidation or foreclosure plans, with respect to leasing, and, in general, with respect to most any contingency that might arise affecting the trust property. They were given the right to determine "what is income and what is principal hereunder, and their decision with respect thereto shall be final." Paragraphs 3 and 5 of the trust instrument provided as follows:

3. The Trustees shall proceed as expeditiously as may be possible to liquidate the assets of the Trust Estate and to reduce the same to liquid form. From such of the assets from said Trust Estate as may be available from time to time, said Trustees shall purchase the following paid up annuities from responsible life insurance companies and associations doing business in the United States:

Upon the life of John Becklenberg, son of Fred Becklenberg, Sr., providing for the payment of Two Hundred Dollars ($200.00) per month during the life of John Becklenberg for his support, care and maintenance;

Upon the life of Maria Becklenberg, providing for the payment to Maria Becklenberg during her life time of the sum of Ten Thousand Dollars ($10,000.00) per year;

Upon the life of Fred Becklenberg, Sr., providing for the payment to said Fred Becklenberg, Sr., during his life time of the sum of Fifteen Thousand Dollars ($15,000.00) per year;

Said Trustees shall expend the remainder of the net proceeds of said Trust Estate in the purchase of annuities payable to and upon the lives respectively of Fred Becklenberg, Jr. and Mary B. Murphy, the son and daughter respectively of Fred Becklenberg, Sr.

In the event of the death of John Becklenberg, Maria Becklenberg or Fred Becklenberg, Sr., prior to the purchase of the aggregate amount of annuities herein provided to be purchased for the benefit of the one so dying, that share of the Trust Estate herein provided to be expended for the purchase of such annuities shall go to enhance the annuities of Fred Becklenberg, Jr., and Mary B. Murphy. In the event of the death of Fred Becklenberg, Jr., or Mary B. Murphy prior to the disposition of the remainder of said Trust Estate and the purchase of annuities therewith, that share of the Trust Estate which would have been expended for the purchase of annuities upon the life of the one so dying, shall be expended for the purchase of annuities upon the lives of the heirs of the one so dying per stirpes and not per capita.

During the life time of Fred Becklenberg, Sr., and prior to his resignation as Manager, the Trustees shall purchase the annuities above provided to be purchased only upon the direction in writing of Fred Becklenberg, Sr., and in such companies, at such times, in such chronological order and in such amounts (not exceeding, however, the aggregate amounts above provided to be purchased for the respective beneficiaries) as said Fred Becklenberg, Sr. shall by instrument in writing direct.

  *    *    *    *    *    *    *

5. Until the purchase of the aggregate amount of annuities herein provided to be purchased for John Becklenberg, Maria Becklenberg and Fred Becklenberg, Sr., said Trustees shall from time to time, at the direction of the Manager, expend for the support of John Becklenberg, and pay to Maria Becklenberg and Fred Becklenberg, Sr., respectively, such sums not exceeding in the case of John Becklenberg, the sum of Twenty-Four Hundred Dollars ($2,400.00) annually; not exceeding in the case of Maria Becklenberg, the sum of Ten Thousand Dollars ($10,000.00) annually; and not exceeding in the case of Fred Becklenberg, Sr., the sum of Fifteen Thousand Dollars ($15,000.00) annually, at such times and in such manner as said Manager may in his uncontrolled discretion believe may be so expended without endangering the financial structure and purpose of the Trust Estate and as he may duly direct.

Paragraph 12 of the trust instrument provided that in purchasing the annuities "said Trustees shall expend the principal or corpus of said Trust Estate and such accumulated or current income as may be available for said purpose." The corpus of the 1934 trust was transferred in its entirety to the trustees of the 1938 trust to be held in accordance with its terms. No other contributions to corpus were made to the 1938 trust.

On October 23, 1942, the trustee and trust manager transferred, by trustee's deed, the residence at 454 Barry Avenue, Chicago, Illinois, to the decedent. The trustee's deed transferring this property to the decedent contained the following clauses:

WHEREAS, under the terms of Sections 3 and 5 of said Trust Agreement said MARIA BECKLENBERG was entitled to certain payments, and the said MARIA

BECKLENBERG contends that there have been divers deficiencies and deficits in the payment of said amounts due and payable to her under the terms of said Trust Agreement accruing prior to January 1, 1942, and the said MARIA BECKLENBERG has made on account of said alleged deficits certain claims against said Trust Estate; and

WHEREAS, the above named parties of the first part as Trustee and as Manager of said Trust, have determined in the exercise of the discretion in them vested under the terms of said Trust Agreement, to settle, compromise and compound said claims of said MARIA BECKLENBERG and said MARIA BECKLENBERG has agreed to and with the said parties of the first part to accept the foregoing conveyance in compromise and settlement of her said claims against said Trust Estate.

On July 15, 1943, Fred Becklenberg, Sr., as trust manager, and Fred Becklenberg, Jr., as trustee, filed in the Superior Court of Cook County a suit to approve trustees' accounts and for construction of the trust instrument and instruction as to whether distribution could be made to Fred Becklenberg, Jr., and Mary B. Murphy. In the verified complaint, consisting of some 65 pages, the plaintiffs stated their interpretation of the 1938 trust instrument to be, so far as material here, that Maria Becklenberg was entitled to annual payments of $10,000 from the trust until the annuity was purchased but wide discretion was vested in the trust manager and trustees as to "when or whether said annuities from life insurance companies should be purchased." The decree rendered by the Illinois court approved the trustees' accounts, including the deed settling decedent's claim for back payments, and approved the interpretation of the trust instrument by the trustees in the following language:

(b) That the method of administration and procedure followed by the Trustee and Trust Manager in the administration of the Trust created by said Trust Agreement of August 12, 1938, and their policies, methods and administration are proper and correct and may continue and may be followed in the future by said Trustee and Trust Manager; that under the true meaning, construction and intent of said Trust Agreement of August 12, 1938, and in view of the changed conditions and circumstances above detailed in this decree, that the distribution to FRED BECKLENBERG, JR. and to MARY B. MURPHY should not be restricted to the purchase of life insurance annuities, but that under the true intent, meaning and construction of said Trust Agreement dated August 12, 1938, that the Trustee is authorized from time to time, and at his discretion, and with the approval of the Trust Manager, during his lifetime, and at the sole discretion of the Trustees, in the event of the death or resignation of the Trust Manager, having regard to the financial condition of said Trust Estate, to make distribution of the income, principal or proceeds of said Trust Estate in equal shares to said MARY B. MURPHY and FRED BECKLENBERG, JR., or in the case of the death of either of them, to the heirs of the one so dying, in the shares provided in said Trust Agreement, having due regard, however, to the preservation of sufficient of the principal or corpus of said Trust Estate to assure annual payments provided under said Trust Agreement dated August 12, 1938, to be made to FRED BECKLENBERG, SR., MARIA BECKLENBERG, and for the support, care and maintenance of JOHN BECKLENBERG, as pro-

vided in said Trust Agreement dated August 12, 1938. Provided, however, that before such distribution shall be made prior to the purchase of annuities provided in said Trust Agreement of August 12, 1938, to be purchased for FRED BECKLENBERG, SR., MARIA BECKLENBERG and JOHN BECKLENBERG, that FRED BECKLENBERG, SR., MARIA BECKLENBERG, MARY B. MURPHY and FRED BECKLENBERG, JR. or the survivors of them, shall certify in writing their opinion that the remainder of the principal or corpus of said Trust Estate is amply sufficient to assure the payments provided in said Trust Agreement of August 12, 1938, to be made to FRED BECKLENBERG, SR., MARIA BECKLENBERG and JOHN BECKLENBERG and that such distribution is approved by them.

No annuities were purchased from the assets of the 1938 trust during the life of the decedent. In the years 1940 through 1951 the decedent received the following cash payments from the 1938 trust:

| Years | Amounts paid | Years | Amounts paid |
|-------|-------------|-------|-------------|
| 1940 | $1, 361. 41 | 1947 | $10, 000. 00 |
| 1941 | 4, 989. 37 | 1948 | 10, 000. 00 |
| 1942 | 9, 942. 28 | 1949 | 10, 000. 00 |
| 1943 | 10, 000. 00 | 1950 | 10, 000. 00 |
| 1944 | 10, 000. 00 | 1951 | 9, 988. 00 |
| 1945 | 10, 000. 00 | | |
| 1946 | 10, 000. 00 | | 106, 281. 06 |

The 1938 trust reported the following amounts as net income before reductions for distributions to income beneficiaries and paid the following taxes:

| Years | Trust income | Distribution to beneficiaries | Taxes paid |
|-------|-------------|------------------------------|-----------|
| 1938 | $40, 789. 53 | $40, 789. 53 | (2) |
| 1939 | 37, 774. 78 | 37, 774. 78 | (3) |
| 1940 | 1 (3, 987. 74) | (2) | (3) |
| 1941 | 20, 080. 23 | 20, 080. 23 | (3) |
| 1942 | 1 (9, 129. 73) | (2) | (3) |
| 1943 | 4, 502. 88 | 4, 502. 88 | (3) |
| 1944 | 36, 160. 05 | 29, 866. 33 | $1, 603. 93 |
| 1945 | 32, 817. 04 | 32, 617. 84 | 22. 82 |
| 1946 | 6, 652. 30 | 6, 652. 30 | (3) |
| 1947 | 42. 840. 30 | 38, 882. 83 | 768. 21 |
| 1948 | 66, 014. 84 | 24, 040. 11 | 18, 485. 89 |
| 1949 | 66, 277. 22 | 12, 018. 23 | 26, 326. 53 |
| 1950 | 98, 814. 16 | 10, 539. 95 | 51, 932. 57 |
| 1951 | 61, 022. 18 | 61, 022. 18 | (3) |

1 Loss.
2 None shown.
3 None.

The net investment of the 1938 trust was in the amount of $2,181,-218.24 for each of the years 1949, 1950, and 1951. On December 3, 1951, the date of Maria's death, the value of all assets held by the trust, after deduction of all liabilities, including all mortgage encumbrances, was $2,181,218.24.

No portion of the corpus of the 1938 trust was included by the executor in decedent's gross estate in computing the estate tax liability. The respondent included a portion of the trust corpus in

decedent's gross estate and in his statutory notice of deficiency made the following explanation:

It is determined that decedent was one of the donors to a trust created by her and other persons under date of August 12, 1938, and that decedent transferred property to said trust which had a fair market value at the date of her death of $584,130.24 and in respect to which decedent retained the right to the income therefrom for her life, or for a period not ascertainable without reference to her death, or for a period which did not in fact end before her death within the meaning of section 811 (c) (1) (B) of the 1939 Internal Revenue Code.

OPINION.

Respondent does not now seek to sustain his determination that all of the property contributed by decedent with a value determined by respondent at the time of her death of $584,130.24 is includible in decedent's estate under section 811 (c) (1) (B) by reason of decedent's retaining the right to income. His main argument at the time of trial and his main argument now on brief is that decedent retained the right to an annual distribution of $10,000 and that portion of the corpus contributed by her necessary to produce an annual income of $10,000 was includible in her estate under section 811 (c) (1) (B).

This section provides as follows:

SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\* \* \* \* \* \* \*

(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, \* \* \* (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; \* \* \*

The indisputable fact is that decedent received the right to annual payments of $10,000 from the 1938 trust until the trust purchased the annuity policy that would produce $10,000 annual payments from some insurance company. This is the way all of the donors construed the instrument and their interpretation was confirmed by the State court. This is made abundantly clear by the claim for back payments made by decedent which was settled by the deed, the construction

alleged in the interpretation suit, and the court decree, and the actual payment to decedent of $10,000 annually until she died. There is no merit in petitioner's argument that all decedent obtained under the 1938 trust was the right to compel the trustees to purchase an annuity that would give her annual payments of $10,000. The argument is foreclosed by the interpretation of the 1938 trust instrument by the donors and the Illinois court.

Petitioner argues that even if decedent had the right to receive $10,000 annually from the trust, there was not a retained right to any income from any property decedent conveyed to the trust. The contributions to the trust were mingled. The property in the 1934 trust was transferred in toto to the 1938 trust. No attempt was made to identify the original contributions if that would have been possible.

In 1934, when decedent and the other parties created the 1934 trust, they attached to the trust instrument a schedule of the properties contributed by each grantor to such trust. The values of the properties were apparently listed at book values, and on the basis of such values, the properties contributed by the decedent amounted to 26.78 per cent of the total properties contributed to the 1934 trust. From 1934 through 1938 the trust was operated as a common fund with no effort to keep the accounts of the grantors separate and distinct. Proceeds were kept in a joint fund with no attempt at segregation. In fact, several of the actual properties contributed by the decedent were sold or otherwise disposed of by the trust in this period. In 1938 the 1934 trust was revoked and on the same date the same parties contributed their interests in the revoked trust to the 1938 trust. Nothing was distributed and no apportionment of interest in the 1938 trust was attempted.

Decedent's contributed property consisted of 26.78 per cent of the mingled assets that made up the total trust corpus of the 1938 trust, so her interest in the trust corpus was 26.78 per cent of the total corpus.

Petitioner argues that even if decedent was entitled to $10,000 annual payments, and her contributed property was a per cent of mingled property that made up the entire trust corpus, still there was no specific clause retaining any portion of income from the per cent she contributed since the $10,000 annual payments could have been made out of principal or corpus at the discretion of the trustees. While it is true that the annuities, when and if purchased, could have been purchased with the use of corpus as well as income, it is not clear that the trust instrument, as interpreted by decedent, the trustees, and by the State court, provides that the annual payment of $10,000 could have been made from corpus as well as from income. As a matter of fact, the payments to decedent were *not* made from corpus,

and in the one instance when the trustees did transfer to her the residential property in full settlement of decedent's back claims, it was thought necessary to lay this transaction before the State court in the 1943 action and to get the court's specific approval for such transfer. The record shows the trust took an income tax deduction for payments made to decedent.

In any event, we think the lack of a specific clause providing the $10,000 payment be made solely from income is immaterial. The retention of an annual distribution from income is present when the settlor retains the right to annual payments of a stipulated amount which, at the discretion of the trustee, can be made from either the corpus or income of the property contributed by the settlor. The test of the statute is whether decedent retained a right to income. The retention of a right to annual payments that can be made from income from contributed property is clearly a retention of a right to income. In *Helvering* v. *Mercantile-Commerce Bank & Trust Co.*, 111 F. 2d 224, reversing on other grounds *Estate of Paul F. Donnelly*, 38 B. T. A. 1234, certiorari denied 310 U. S. 654, the words of the statute "retained the right to the income" were held to mean "the opposite of surrendered the right to the income." There is no surrender of the right to income when the transferor retains the right to demand annual payments to be charged against the transferred property or its income.

This is not the case, as petitioner argues, where one transfers property, free and clear, to a recipient who in turn contracts to pay the transferor a stipulated annuity. *Estate of Sarah A. Bergan*, 1 T. C. 543. In such a case the transferee is free to use the property as he wishes and the transferor is left with the personal obligation of the recipient. The distinction between the two types of cases is aptly made by the Supreme Court in *Fidelity-Philadelphia Trust Co.* v. *Smith*, 356 U. S. 274:

Where a decedent, not in contemplation of death, has transferred property to another in return for a promise to make periodic payments to the transferor for his lifetime, it has been held that these payments are not income from the transferred property so as to include the property in the estate of the decedent. E. g., Estate of Sarah A. Bergan, 1 T. C. 543, acq., 1943 Cum. Bull. 2; Security Trust & Savings Bank, Trustee, 11 B. T. A. 833; Seymour Johnson, 10 B. T. A. 411; Hirsh v. United States, 35 F. 2d 982 [8 A. F. T. R. 9812] (Ct. Cl. 1929) ; cf. Welch v. Hall, 134 F. 2d 366 [30 A. F. T. R. 1134]. In these cases the promise is a personal obligation of the transferee, the obligation is usually not chargeable to the transferred property, and the size of the payments is not determined by the size of the actual income from the transferred property at the time the payments are made.

Here there was no personal obligation on the part of anyone to purchase an annuity for decedent, in any event, in exchange for the property transferred by her. Instead, it was a transfer in trust with the

property so transferred charged with the obligation to make certain annual payments to the decedent during her life and also charged with the obligation (if it can be called an obligation at all) to provide an annuity for the decedent under conditions which were at the uncontrolled discretion of the trustees and manager.

The respondent's regulations under section 811 (c) provide that "[i]f a portion only of the property was so transferred as to come within the terms of the statute, only a corresponding proportion of the value of the property should be included in ascertaining the value of the gross estate." Regs. 105, sec. 81.15. Here the decedent retained the right to annual distributions in the amount of $10,000 and we must determine what portion of the property transferred by her to the 1938 trust was required to provide these annual payments as long as she lived.

Decedent contributed property to the trust which was given a value of $379,166.37 in 1934. This was 26.78 per cent of the total stated value of all of the assets of the 1934 trust. All of the trust assets of the 1934 trust were mingled and transferred in toto to the 1938 trust. No other contribution was made by anyone to the 1938 trust and this trust was also carried on as a single unit with mingled assets. The assets of the 1938 trust increased in value so that at the time of decedent's death in December 1951 the net value of the trust estate was $2,181,218.24. We think it clear the share of the net value in 1951 attributable to decedent's contribution was still 26.78 per cent or $584,130.24. Respondent determined the portion of the property transferred by decedent to the 1938 trust, which was required to provide the annual payments of $10,000 as long as she lived, in the following manner: The trust income, before distribution to beneficiaries in the years 1949, 1950, and 1951 was $66,277.22, $98,814.16, and $61,022.18, respectively. On the basis of these amounts the trust average return for these years was 0.03455 per cent. Capitalizing the annual return of $10,000 by this average rate respondent arrived at the amount of $289,855.07, which he contends is the decedent's interest in the trust corpus includible in her gross estate because of the retained right to annual payments of $10,000 a year. We agree in principle with respondent's determination and, under the facts in this case, with the amount determined by him.

Respondent seeks to sustain his determination that decedent's entire share in the trust estate ($584,130.24) is includible in her estate by a short argument that under the trust instrument as interpreted by the Illinois court, decedent retained control over the distribution of income to other beneficiaries. In its decree, the court instructed the trustees that in the event the annuities were not purchased, the trustees and trust manager were authorized at their discretion to make

distributions to Mary B. Murphy and Fred Becklenberg, Jr., provided decedent, her husband, Fred Becklenberg, Jr., and Mary B. Murphy all certified in writing their opinion that the remainder was amply sufficient to assure the payments to decedent and her husband, and decedent and her husband approved such distributions. Respondent's argument on brief is that "[a]s long as decedent remained alive, she was able to preclude the distribution of income to the other beneficiaries at her whim or caprice." It is respondent's contention that the foregoing gave decedent "the right, either alone or in conjunction with any other person, to designate the persons who shall possess or enjoy the property or the income therefrom" within the language of section 811 (c) (1) (B) (ii) and within the holding of such cases as *Estate of Milton J. Budlong*, 7 T. C. 756.

There is no merit in this portion of respondent's argument. This portion of the court's decree is not exactly interpretive of the trust instrument. There just was no clause in the trust instrument providing for distribution to Fred Becklenberg, Jr., and Mary Murphy when no annuities were purchased. This is merely a practical instruction which the court supplied at the behest of the plaintiffs in the action, more in the nature of reformation, and it accomplished about what the parties could have done if the court had not furnished the instruction at all. Distribution can probably be made in any trust to any named beneficiary when all of those who might be adversely affected by the distribution approve it. The decree recognized that first claim for distribution was the stipulated payments to the donors. Decedent's first claim was for an annual payment of $10,000 as long as she lived. The giving or withholding of her approval to a distribution to beneficiaries who might not be entitled thereto until after her claim was satisfied, is not the exercise of a "right * * * to designate the persons who shall possess or enjoy the property or the income therefrom" within section 811 (c) (1) (B) (ii).

*Decision will be entered under Rule 50.*